SLR:LDM/BDM:WJG
F.#: 2011V02670

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

                    Plaintiff,

          -against-

APPROXIMATELY ONE HUNDRED FIFTY-FOUR
THOUSAND FIVE HUNDRED FORTY-SIX DOLLARS
AND TWENTY-SEVEN CENTS ($154,546.27) SEIZED
FROM J.P. MORGAN CHASE ACCOUNT NUMBER
860972611 HELD IN THE NAME OF CARIBCO
SHRIMP CORPORATION, AND ALL PROCEEDS
TRACEABLE THERETO, AND

APPROXIMATELY FOUR THOUSAND NINE
HUNDRED TWENTY-FOUR DOLLARS AND
SIXTY-TWO CENTS ($4,924.62) SEIZED FROM J.P.
MORGAN CHASE ACCOUNT NUMBER 860972611
HELD IN THE NAME OF CARIBCO SHRIMP
CORPORATION, AND ALL PROCEEDS
TRACEABLE THERETO,

               Defendants In Rem.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

VERIFIED COMPLAINT
IN REM



CV 12 - 6292

KORMAN, J.

AZRACK, M.J.

WARRANT ISSUED

WARRANT ISSUED

2012 DEC 21 AM 11:
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK
FILED
CLERK

       Plaintiff, the United States of America, by its attorneys, Loretta E. Lynch, United

States Attorney for the Eastern District of New York, and William J. Gullotta, Assistant United

States Attorney, alleges upon information and belief as follows:

**PRELIMINARY STATEMENT**

    1.     This is a civil action in rem to forfeit and condemn to the use of the United States

the above-captioned defendant funds (the "Defendant Funds"), in accordance with: 18 U.S.C.

§ 981(a)(1)(A), as property involved in a violation of 18 U.S.C. §§ 1956 or 1957, or property

traceable to such property; and/or 21 U.S.C. § 881(a)(6), as moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, or proceeds traceable to such an exchange, or as money used or intended to be used to facilitate any violation of Title 21 of the United States Code, or property traceable thereto.

## JURISDICTION AND VENUE

2.    This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

3.    Venue lies in the Eastern District of New York pursuant to 28 U.S.C. §§ 1355 and 1395, in that the Defendant Funds are found in the Eastern District of New York.

## THE DEFENDANT IN REM

4.    The Defendant Funds consist of a total of $159,470.89, seized from J.P. Morgan Chase account number 860972611 pursuant to federal seizure warrants issued on July 12, 2012, and October 3, 2012.  The account (the "Target Account") is held in the name of Caribco Shrimp Corporation ("Caribco").

## STATUTORY BACKGROUND

5.    Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, which is involved in a transaction or attempted transaction in violation of federal money laundering laws, 18 U.S.C. §§ 1956 or 1957, and any property traceable thereto, is subject to forfeiture to the United States.

6.    Pursuant to 21 U.S.C. § 881(a)(6), all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and all proceeds traceable

to such an exchange, and all money used or intended to be used to facilitate any violation of Title 21 of the United States Code, is subject to forfeiture to the United States.

## BANK SECRECY ACT

7.     The Currency and Foreign Transactions Reporting Act, 31 U.S.C. § 5313 et seq., also known as the Bank Secrecy Act (the "BSA"), imposes reporting requirements on virtually all transactions involving more than $10,000 in United States currency.  Pursuant to 31 U.S.C. § 5313(a) and its related regulations, when a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of U.S. coins or currency ("cash") in an amount greater than $10,000, the institution is required to file a Currency Transaction Report ("CTR") for each cash transaction.  CTRs are filed with the Financial Crimes Enforcement Network ("FinCEN") at the Detroit Data Center on forms that require, among other things, the identity of the individual who conducted the transaction and the individual or organization for whom the transaction was completed.

8.     Pursuant to 31 U.S.C. § 5331 and related regulations, any trade or business that receives more than $10,000 in U.S. currency or money orders, in one or more related transactions, is required to collect personal identifying information from the customer, similar to that collected for CTRs, and must file that information on a form filed with the IRS.  This form is commonly referred to as "form 8300."  A wire transfer does not constitute "cash," and therefore does not trigger a form 8300 filing requirement.

## FACTS

The Black Market Peso Exchange

9.     Money laundering includes the act of transferring illegally obtained money, including money obtained from the narcotics trade, through other accounts in order to conceal its

3

original source.  One known method of laundering narcotics proceeds bound for Colombia is the Black Market Peso Exchange ("BMPE").

10.     The BMPE is used to remit narcotics proceeds generated in the United States to suppliers located in Colombia and other South and Central American countries.

11.     Due to increased vigilance and enforcement of the BSA, it has become increasingly difficult for participants in the BMPE to place illicit cash into domestic bank accounts while avoiding form 8300 filing requirements.

12.     There has been a significant rise in the amount of cash smuggled into Central America, mainly for the purpose of depositing the funds into financial institutions located in those countries, which are far more lenient in their reporting of cash transactions to governmental authorities.

13.     Once the cash is deposited into a foreign financial system, it may be wire transferred anywhere in the world, including into the United States.

14.     BMPE brokers often offer South American importers an opportunity to wire the payment of a debt owed to an American exporter at a significant discount as compared to a standard bank transfer.  The BMPE brokers then collect "clean" pesos from the importer and wire the illicit narcotics cash proceeds to pay the American exporters.

The Guatemalan Wire Transfers

15.     Law enforcement agents have traced suspicious wire activity in a number of Guatemalan bank accounts held in the name of Conservis International, Inversiones Marla, Proinoser, Kibo Creativo Y Productos, and Arco Muebles Y Projectos (the "Guatemalan Companies").  As none of the Guatemalan Companies has active business operations, the Guatemalan Companies appear to be laundering narcotics cash proceeds as BMPE brokers.

16.     Law enforcement agents reviewed bank records for all outgoing wire activity in the United States originating from the Guatemalan Companies and found that the Guatemalan Companies sent wire transfers to a number of South Florida and Los Angeles area businesses that were suspected of participation in the BMPE on the basis of having received bank warnings of structuring activity that preceded the wires, such as Computer Storage and Periferals, LLC ("CSP"), SMT of America ("SMT"), Dishegua USA Incorporated ("Dishegua"), Compu-Cell of America ("Compu-Cell"), Trading Freight, Inc. ("Trading Freight"), Opus Global Solutions ("Opus Global"), and Ma Laboratories.

17.     Based on the BMPE wire activity from the Guatemalan Companies, the United States successfully obtained and executed a number of seizure warrants for accounts held by businesses that received suspicious wire transfers from the Guatemalan Companies.

Prior Seizures Involving The Guatemalan Companies

18.     On or about July 19, 2011, the Honorable Andrew L. Carter, Jr., United States Magistrate Judge, Eastern District of New York, issued a warrant authorizing the seizure of two (2) HSBC bank accounts held in the name of CSP, finding probable cause to believe that the funds on deposit, which included funds wired from the Guatemalan Companies, were subject to seizure and forfeiture as property involved in violations of 18 U.S.C. §§ 1956 or 1957, or property traceable to such property, and/or 21 U.S.C. § 881, as funds traceable to the sale of narcotics, and/or property involved in violations of 31 U.S.C. § 5324. These funds are pending administrative forfeiture.

19.     On or about October 4, 2011, the Honorable Robert M. Levy, United States Magistrate Judge, Eastern District of New York, issued a warrant authorizing the seizure of a Suntrust bank account held in the name of SMT, finding probable cause to believe that the funds

5

on deposit, which included funds wired from the Guatemalan Companies, were subject to seizure and forfeiture as property involved in violations of 18 U.S.C. §§ 1956 or 1957, or property traceable to such property, and/or 21 U.S.C. § 881, as funds traceable to the sale of narcotics. A verified complaint in rem was filed on March 15, 2012, against the funds seized from SMT.

20.    On or about November 18, 2011, the Honorable Steven M. Gold, United States Magistrate Judge, Eastern District of New York, issued a warrant authorizing the seizure of a Bank of America account held in the name of Dishegua, finding probable cause to believe that the funds on deposit, which included funds wired from the Guatemalan Companies, were subject to seizure and forfeiture as property involved in violations of 18 U.S.C. §§ 1956 or 1957, or property traceable to such property, and/or 21 U.S.C. § 881, as funds traceable to the sale of narcotics, and/or property involved in violations of 31 U.S.C. § 5324. These funds are pending administrative forfeiture.

21.    On or about January 27, 2012, the Honorable Joan M. Azrack, United States Magistrate Judge, Eastern District of New York, issued a warrant authorizing the seizure of a Bank of Atlantic account held in the name of Compu-Cell of America, finding probable cause to believe that the funds on deposit, which included funds wired from the Guatemalan Companies, were subject to seizure and forfeiture as property involved in violations of 18 U.S.C. §§ 1956 or 1957, or property traceable to such property, and/or 21 U.S.C. § 881, as funds traceable to the sale of narcotics. A verified complaint in rem was filed on June 21, 2012, against the funds seized from Compu-Cell.

22.    On or about January 27, 2012, the Honorable Joan M. Azrack, United States Magistrate Judge, Eastern District of New York, issued a warrant authorizing the seizure of a Wells Fargo account held in the name of Trading Freight and an East West Bank account held in

the name of Opus Global, finding probable cause to believe that the funds on deposit, which included funds wired from the Guatemalan Companies, were subject to seizure and forfeiture as property involved in violations of 18 U.S.C. §§ 1956 or 1957, or property traceable to such property, and/or 21 U.S.C. § 881, as funds traceable to the sale of narcotics. A verified complaint in rem was filed on August 6, 2012, against the funds seized from both Trading Freight and Opus Global.

The First Seizure of the Caribco Shrimp Account

23.     Caribco is a wholesale seafood distributor located at 19495 Biscayne Boulevard, Suite 607, Aventura, Florida 33180.

24.     Larry Abramowitz is listed as the President of Caribco. Vanessa Abramowitz and Antonio Chalela are signatories on the Target Account.

25.     From July 20, 2011, to September 2, 2011, there were five (5) wire deposits (the "Guatemalan Wires") made into the Target Account that originated from the Guatemalan Companies. The total amount of those wire transfers was $154,546.27.

| Company Name | Date | Amount |
|---|---|---|
| Kibo Creativos Y Projectos | 7/20/2011 | $43,400.00 |
| Conservis International | 8/9/2011 | $37,301.27 |
| Inversiones Marla | 8/30/2011 | $10,000.00 |
| Arco Muebles Y Projectos | 9/2/2011 | $42,000.00 |
| Arco Muebles Y Projectos | 9/2/2011 | $21,845.00 |

26.     Despite the wire activity described above, Caribco made no exports to Guatemala from 2009 to the present.

27.     On or about July 16, 2012, agents from the Department of Homeland Security ("DHS") seized approximately $154,546.27 from the Target Account pursuant to a seizure warrant issued by United States Magistrate Judge Marilyn D. Go on July 12, 2012 (the "First

7

Seizure").

The Second Seizure of the Caribco Shrimp Account

28.     An investigation by DHS into suspicious financial transactions in Honduras revealed ongoing BMPE activity in Honduras.  According to a witness involved in the investigation, BMPE brokers in Honduras directed local associates in Honduras to open multiple accounts in Honduran banks, deposit United States currency into those accounts, and wire that money according to the brokers' instructions.  The brokers chose new locations each time they met with and delivered United States currency to their associates.

29.     A witness informed DHS that the Honduran brokers often utilized certain email accounts to communicate with their associates regarding financial transactions in United States currency.  Email messages are typically used to provide instructions regarding the accounts into which narcotics proceeds should be deposited and confirm other money laundering activity.

30.     A witness provided DHS with access to his email account.  During a review of that account, DHS agents found multiple email messages depicting BMPE activity, including wire transfer requests.

31.     Based on its investigation, DHS applied for a federal search warrant authorizing DHS to review various email accounts associated with the Honduran individuals and entities involved in multiple wire transactions from Honduras to businesses in the South Florida area. On July 12, 2012, United States Magistrate Judge Marilyn D. Go issued the search warrant applied for by DHS.

32.     A review of the relevant email accounts revealed numerous wire transactions reflecting payments made by Honduran individuals and entities to various businesses located in the South Florida metropolitan area.

33.     South Florida is an area known to have a large number of businesses involved in the BMPE with Honduran individuals and entities.

34.     HSI's investigation revealed the following individuals and entities made wire payments pursuant to BMPE transactions to entities in the United States: (a) Jorge Lenin Claros Nolasco; (b) ACB Import and Export; (c) Melvin Arriaza Gutierrez; (d) Mercaderia E. Importaciones; (e) Giros Latinos, S. De RL; (f) Corporacion de Inv Nacionales S.A.; (g) Lafise; (h) Importadora JVA; (i) Tiendas Alexis S del RL; and (j) Coin SA, LLC (collectively, the "Honduran Entities").

35.     During the period from October 11, 2011 through November 4, 2011, there were four (4) wire deposits made into the Target Account that originated from a Honduran Entity (the "Honduran Wires"). The total amount of the Honduran Wires was $196,735.95.

| Company or Individual | Date | Amount |
|---|---|---|
| Jorge L. Claros Nolasco | 10/11/2011 | $50,000.00 |
| ACB Import and Export | 10/31/2011 | $50,000.00 |
| Melvin Arriaza Gutierrez | 11/03/2011 | $50,000.00 |
| Jorge L. Claros Nolasco | 11/4/2011 | $46,735.95 |

36.     Despite this considerable wire activity, Caribco did not export any goods to Honduras during the period from 2009 to the present.

37.     On or about October 3, 2012, United States Magistrate Judge Ramon E. Reyes issued a seizure warrant authorizing the seizure of up to $196,735.95 from the Target Account. Pursuant to that seizure warrant, on or about October 22, 2012, agents of DHS seized $4,924.62 from the Target Account (the "Second Seizure").

38.     By letter dated August 9, 2012, Caribco was notified by U.S. Customs and Border Protection ("CBP") as to the First Seizure of the Defendant Funds.

39.     On August 23, 2012, CBP received a written request from Caribco's attorney

9

asking that the First Seizure be referred for judicial proceedings.

40.    By letter dated November 5, 2012, Caribco was notified by CBP as to the Second Seizure of the Defendant Funds.

41.    On November 20, 2012, CBP received a written request from Caribco's attorney asking that the Second Seizure be referred for judicial proceedings.

**FIRST CLAIM FOR RELIEF**
**(Property Involved in Money Laundering)**

42.    Plaintiff repeats the allegations of paragraphs 1 through 41 as if fully set forth herein.

43.    The Defendant Funds constitute property involved in money laundering, a violation of 18 U.S.C. §§ 1956 or 1957.

44.    As such, the Defendant Funds are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

**SECOND CLAIM FOR RELIEF**
**(Property Traceable to Sale of Controlled Substance)**

45.    Plaintiff repeats the allegations of paragraphs 1 through 41 as if fully set forth herein.

46.    The Defendant Funds constitute money, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance, or proceeds traceable to such an exchange, or money used or intended to be used to facilitate a violation of Title 21 of the United States Code.

47.    As such, the Defendant Funds are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, Plaintiff requests that a warrant of this Court be issued for the arrest of

the Defendant Funds; that notice of these proceedings be given to all interested persons; that the

Defendant Funds be forfeited and condemned to the use of the United States of America; that the

Plaintiff be awarded its costs and disbursements in this action and for such other and further

relief as this Court deems just and proper.

Dated: Brooklyn, New York
      December  21 , 2012

                                  LORETTA E. LYNCH
                                  UNITED STATES ATTORNEY
                                  Attorney for Plaintiff
                                  Eastern District of New York
                                  271 Cadman Plaza East
                                  Brooklyn, New York 11201

          By:

                                  William J. Gullotta
                                  Assistant United States Attorney
                                  (718) 254-6148

## VERIFICATION

1.      I am a Special Agent with the Department of Homeland Security ("DHS")

and, as such, have knowledge of the facts underlying this action.

2.      I have read the within verified complaint <u>in</u> <u>rem</u> and know the contents

thereof.

3.      The matters contained in the within verified complaint <u>in</u> <u>rem</u> are true and

accurate to the best of my knowledge, information and belief.

4.      The source of my information and the grounds for my belief are my

personal knowledge, information provided by other law enforcement officers, and the official

files and records of the DHS and other law enforcement agencies.


I declare under penalty of perjury that the foregoing is true, to the best of my

knowledge, information, and belief.

Dated: Brooklyn, New York
       December 21, 2012

Anthony F. Caramanica
Special Agent
Department of Homeland Security

12